**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

JESSICA J. L.,

          Plaintiff,

    v.                                        **DECISION AND ORDER**
                                                    18-CV-399-A

ANDREW SAUL,[1]
Acting Commissioner of Social Security,

          Defendant.

_____

Plaintiff seeks review of the Commissioner of Social Security's final decision denying her application for Supplemental Security Income ("SSI") disability benefits under the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 13, 16), and Plaintiff filed a reply (Dkt. No. 18). The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision. *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges [ALJs] are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

For the reasons stated below, the Commissioner's motion is denied, Plaintiff's motion is granted in part and denied in part, the Commissioner's final decision is vacated, and the case is remanded for further proceedings consistent with this Decision and Order

The Court must "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quotation marks omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla." *Sczepanski*, 946 F.3d at 157.

## DISCUSSION

Plaintiff's primary argument is that the ALJ failed to consider or improperly weighed relevant evidence, which resulted in a Residual Functional Capacity (RFC) finding that was not supported by substantial evidence, warranting remand.

An individual's RFC is "what an individual can still do despite his or her limitations", or in other words his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.] [T]he RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Melville v. Apfel*, 198 F.3d 45, 53 (2d Cir. 1999), quoting SSR 96-8p, 1996 SSR LEXIS 5 at *5, 1996 WL 374184, *2 (S.S.A. July 2, 1996). "It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-

2

severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis." *Williams v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 151236, *7 (W.D.N.Y. Aug. 20, 2020), citing 20 C.F.R. §§ 404.1545(a)-(e) and *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).

Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work,[2] except frequently understand, remember, and carry out complex and detailed tasks, and avoid temperature extremes.  (T. 799-800).[3]

Sedentary work is defined by agency regulations as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a). "'[S]edentary work' generally involves six hours of sitting and two hours of standing or walking during [an eight-hour] workday." *Acevedo v. Berryhill*, 2017 U.S. Dist. LEXIS 189899, *11 (W.D.N.Y. Nov. 16, 2017), citing Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30, *13 and SSR 96-9p, 1996 SSR LEXIS 6, *8-9.

"By its very nature, work performed primarily in a seated position entails no significant stooping.  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  SSR 83-10, 1983 SSR LEXIS 30, *13.  "The

---

[2] "An individual's exertional capability refers to the performance of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work." *Wright v. Saul*, 2019 U.S. Dist. LEXIS 178337, *9, 2019 WL 5157026 (W.D.N.Y. Oct. 15, 2019).

[3] Numerals preceded by "T." refer to pages of the administrative transcript.

SSA rulings indicate that an ability to bend at least occasionally is required for both light and sedentary work." *Burton v. Colvin*, 2014 U.S. Dist. LEXIS 75154, *26-27 (W.D.N.Y. June 2, 2014) (citations omitted).

## A.   Physical RFC finding

In assessing Plaintiff's RFC, the ALJ placed "great weight" on the opinion of consultative examiner John Schwab, D.O., rendered in October 2011.  (T. 802; *see* T. 378-381).  Dr. Schwab examined Plaintiff and noted that she had a normal gait, she could walk on her heels and toes without difficulty, she performed a full squat, she used no assistive devices and required no assistance getting on and off the examination table, and she rose from her chair without difficulty.  He found no abnormalities in her musculoskeletal examination, with a full range of motion and, notably, no issues with her lumbar spine.  Dr. Schwab diagnosed Plaintiff with rheumatoid arthritis, Type I diabetes mellitus, and tobacco abuse.  He found 4.5/5 grip strength of her left hand, and his "Medical Source Statement" was simply that she had a "mild restriction to gripping objects in the left hand."

It is undisputed that Dr. Schwab's opinion is the only medical opinion in the record regarding Plaintiff's physical condition, and the ALJ's decision was rendered in January 2018, approximately six years thereafter.  Because the ALJ's decision was issued after a previous remand from this Court,[4] the ALJ considered Plaintiff's voluminous exhibits that were added to the record, which included medical records through 2017—many which Dr. Schwab did not review.  (T. 793; *see* T. 809-812).

---

[4] This Court previously remanded this case for the ALJ to determine, among other things, whether she met Listing 12.05(c) ("Mental Retardation") at step three of the five-step analysis.  (T. 814-836).  The ALJ determined that she did not.  (T. 799; see T. 386).  Step three is not at issue on this appeal.

4

Plaintiff argues that Dr. Schwab's opinion is stale because it was formed in October 2011, and therefore does not take into account a large portion of medical evidence in the record that is either contradictory or indicates that Plaintiff's condition worsened over time, including evidence that reflects Plaintiff's two major surgeries (*i.e.*, a lumbar fusion and a discectomy), which were unsuccessful.  Plaintiff thus argues that the ALJ erred in assigning Dr. Schwab's opinion great weight and using it to support his RFC finding.  In a related fashion, Plaintiff contends that the ALJ improperly concluded based on Dr. Schwab's stale medical opinion that Plaintiff was capable of sedentary work—and erred in effectively arriving at an RFC finding based on his own lay opinion.

In response, the Commissioner argues that Dr. Schwab's opinion is not stale based merely on its date, as no medical sources contradict his opinion about Plaintiff's minimal physical limitations and the opinion is supported elsewhere in the record.  The Commissioner points to the ALJ specifically mentioning Plaintiff's two back surgeries and significant walking and lifting limitations even after undergoing her back surgery, in another portion of his decision (at step two of the five-step disability analysis).  (T. 795-796).  Thus, the Commissioner reasons, it is apparent that the ALJ was fully aware of Plaintiff's later conditions when he weighed Dr. Schwab's opinion.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. May 19, 2015).  "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 910 (W.D.N.Y. Aug. 27, 2018).  It is well-settled, however, that "a medical opinion is not stale simply based on its age.  A

more dated opinion may constitute substantial evidence if it is consistent with the record as a whole." *Id.*

The ALJ stated that he relied on the opinion of Dr. Schwab in assessing Plaintiff's RFC because that opinion was "supported elsewhere in the record." (T. 802). The ALJ did not explain, however, and it is not evident to the Court, how Plaintiff's treatment records support his assessment that Plaintiff has the ability to perform sedentary work.

Dr. Schwab's opinion was based on an incomplete record, as it was rendered in October 2011 *before* Plaintiff's discectomy in June 2013, slip/ fall in December 2013 with back injury, and lumbar fusion in January 2015 for worsening chronic back pain. (T. 1051, 1101, 1285, 1305, 1500). The latter surgery followed an MRI that noted "a L5-S1 disc herniation encroaching upon the exiting right L5 nerve root and descending right S1 nerve root." (T. 1464, 1499). In October 2015, after the lumbar fusion, Plaintiff was diagnosed with postlaminectomy syndrome in the lumbar region, meaning she had continued pain following her latest back surgery.[5] (T. 1285-1287, 1699). Plaintiff's treatment records noted her recurrent issues with weakness and pain while walking, limping, difficulty pushing off her right foot while walking up stairs, use of a cane at home, and limited range of motion in her spine. (*See e.g.* T. 601, 1051-1056, 1122-1123, 1251-1252, 1266, 1305, 1704). Aside from the two surgeries, she underwent multiple steroid injections in her lumbar spine and knees. (*See e.g.* T. 223, 230, 512, 516, 519-520, 522-523, 772, 1038 1251-1252). Throughout the years, she was

---

[5] "Post-laminectomy syndrome is a condition caused by a back surgery that failed to properly treat pain (also known as failed back surgery)." The condition can be caused by "damage to the spinal nerve root", formation of scar tissue as the body attempts to heal after surgery, or "a negative reaction to the structural changes made to the spine" which this typical in a failed spinal fusion. <u>Conditions: Post-Laminectomy Syndrome: Non-surgical Treatments for Failed Back Surgery</u>, National Spine & Pain Centers, https://www.treatingpain.com/conditions/post-laminectomy-syndrome/ (last visited Apr. 14, 2021).

prescribed opiates to treat her pain, including Norco, Tramadol, Morphine, Percocet, and Hydrocodone.  (*See e.g.* T. 223-224, 512, 1136, 1151, 1227, 1510, 1561-1562).

For an approximate five- to six-month period in 2016, surgery was performed to remove Plaintiff's gallbladder, and she suffered complications from that surgery which required post-operative care.  (*See e.g.* T. 1508-1512, 1658).  Plaintiff also had issues related to her uncontrolled diabetes (*e.g.*, foot ulcers and cellulitis), although as noted by the ALJ, the record is replete with instances of Plaintiff's noncompliance with treatment recommendations for her diabetes, including poor eating habits/ diet and failure to take her diabetes medications.

It is unclear how Dr. Schwab's opinion of only a mild restriction of gripping objects comports with the years of medical evidence of record that Dr. Schwab did not have the benefit of reviewing; moreover, his examination took place before Plaintiff's various surgeries and worsening back pain.  Dr. Schwab noted, for example, Plaintiff's normal gait, squatting, walking with no assistive devices, and rising from a chair or table, as well as her full range of motion and unexceptional lumbar spine—all documented issues, however, in the years following the examination.  The ALJ did note Plaintiff's two back surgeries and difficulties with lifting and walking, and her postlaminectomy syndrome at step two of his analysis.  (T. 795, 800).  The ALJ highlighted Plaintiff's routine rating of her low back pain as 1 to 2 (low end) of a 1-to-10 pain scale after her second surgery in January 2015.  (T. 802).  The records cited by the ALJ reveal that Plaintiff reported 1/10 and 2/10 in severity but she qualified these statements by stating that her pain was aggravated by certain activities (*i.e.*, walking long distances, lifting, bending, and prolonged standing) and was alleviated by rest.  (T.

1038 ["overall" improvement but pain waxed and waned in severity throughout the day], 1051, 1054, 1227, 1251-1252).  In addition, these low-end reports of back pain do not negate the years of severe back pain that Plaintiff regularly reported to her treatment providers after October 2011.

At the administrative hearing held in September 2017, Plaintiff testified that she had difficulty lifting objects (she was not allowed to lift anything over 5 pounds) and bending over and rising back up, and she was not supposed to place pressure on her foot.  Plaintiff testified that she was unable to stoop, as the ALJ recognized in his decision.  (T. 800).  She also described difficulty climbing stairs because she had to place weight on her left side, as her right side/ leg had been affected by her back surgery.  Plaintiff further described pain and swelling in her back following her surgeries and her limitation to 20-30 minutes of standing.  She performed housework for only 15 to 20 minutes and then would take a break for 20 to 30 minutes (lying down on her bed) before resuming work.  Plaintiff further testified that her rheumatoid arthritis was triggered when the temperature was too cold or too hot.  (T. 841-842, 846-849, 853-854).

"While an inability to bend more than occasionally would not 'substantially affect an individual's ability to perform . . . sedentary work,' *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 571 (S.D.N.Y. 2009) (citing SSR 85-15, 1985 SSR LEXIS 20, 1985 WL 56857, at *2-3 (1985)), a complete inability to stoop would render an individual incapable of unskilled sedentary work." *Bleil v. Colvin*, 2017 U.S. Dist. LEXIS 48753, *27 (N.D.N.Y. Mar. 31, 2017).  The vocational expert ("VE") testified that an individual who needed unscheduled breaks or rest periods would be problematic for any job that

would fit in the designated hypothetical if the individual was off-task for 15% or more of the work day.  (T. 858).  The ALJ apparently gave no weight to the VE's finding that frequent rest breaks could prevent a claimant from working, or Plaintiff's testimony about other physical limitations.  The physical RFC includes no accommodations for breaks or changing positions, lifting objects over 5 pounds, or bending over.

It is well settled that "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Urban v. Berryhill*, 2017 WL 1289587, *3 (W.D.N.Y. Apr. 7, 2017) (internal citation and quotation marks omitted).  As such, "even though the Commissioner is empowered to make the RFC determination, [w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." *Id.* (internal citation and quotation marks omitted).  "Still, depending on the circumstances, like when the medical evidence shows only minor physical impairments, 'an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" *Stoeckel v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 185028, *6, 2019 WL 5445518 (W.D.N.Y. Oct. 24, 2019) (internal citation omitted).

The Court concludes that the ALJ cannot render a "common-sense judgment" in this case about Plaintiff's physical RFC, due to the multiple, complex surgeries and treatment described above.  Moreover, the ALJ could not make the connection between the medical records and Plaintiff's functional limitations himself, where the medical

assessment relied upon by the ALJ was stale and based on an incomplete medical record.  No medical source opined about Plaintiff's ability to perform the necessary activities of sedentary work, and the ALJ did not explain the basis for his unstated conclusion that Plaintiff would be capable of walking for up to 6 hours, and standing or walking for up to 2 hours, per 8-hour workday.  Likewise, the ALJ did not provide any rationale for his implicit finding that Plaintiff could fulfill the sitting, standing, lifting, carrying, and bending requirements of a full range of sedentary work.

Plaintiff further argues that the ALJ should have also provided a function-by-function analysis of the seven strength demands in exertional capacity, *i.e.*, her ability to sit, stand, walk, lift, carry, push, and pull in the context of an 8-hour workday, as limited by her impairments.

"An ALJ's failure to express a claimant's RFC in a function-by-function analysis does not necessarily mandate remand so long as the RFC is otherwise supported by substantial evidence." *Pullins v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 213324, *8-9, 2019 WL 6724586 (W.D.N.Y. Dec. 11, 2019) (internal citations and quotation marks omitted); *see Cichocki v. Astrue*, 729 F.3d 172, 176-177 (2d Cir. 2013) (declining to adopt a *per se* rule requiring remand where an "explicit" function-by-function analysis is not performed).  "Although remand is not automatic, it would be appropriate 'where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'"  *Houseman v. Colvin*, 2015 U.S. Dist. LEXIS 144637, *22, 2015 WL 6442571 (W.D.N.Y. Oct. 21, 2015), quoting *Cichocki*, 729 F.3d at 177.

The RFC is not based on substantial evidence, and the ALJ's analysis has complicated the Court's ability to review the ALJ's decision.  There is contradictory evidence in the record regarding Plaintiff's ability to occasionally lift objects up to 10 pounds or bend over, and it is questionable whether she would be able to sit for six hours and stand or walk for two hours, as required by sedentary work.  Remand is warranted here where, in the absence of a supporting medical opinion, the ALJ implied that Plaintiff has the capacity to perform sedentary work because, for example, (1) she exercised "regularly", (2) she had certain hobbies, and (3) her x-ray results showed no significant findings.  The ALJ relied on such findings as supportive of his determination, with respect to Plaintiff's physical RFC, that "[t]he evidence does not support the claimant's allegations of symptom severity."  (T. 801).  The Court does not find this reasoning persuasive.

First, the cited records establish only that Plaintiff stated she swam, as well as walked three or seven days per week (duration of the walks unaddressed) (T. 376, 515, 519, 580, 589, 1044-1045, 1134, 1151).  Plaintiff stated at one of these medical appointments that she was not working due to low back pain, including her need to re-adjust her position "constantly" while standing, sitting, or lying down.  (T. 519).

Second, Plaintiff's hobbies of reading and woodcarving (T. 376, 580, 589), and her testimony concerning her activities of daily living to include household chores and sitting on the floor to play with her young niece and nephews, as also noted by the ALJ (T. 800; *see* T. 851-852), do not involve standing or walking for extended periods of time, "nor are they necessarily indicative of Plaintiff's ability to perform sedentary work, with some additional restrictions, over the course of an eight-hour workday." *Fairuz B.*

11

*v. Saul*, 2021 U.S. Dist. LEXIS 15520, *21-22 (W.D.N.Y. Jan. 27, 2021), citing *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) ("A claimant need not be an invalid to be found disabled under...the Social Security Act.").

Third, the ALJ noted that Plaintiff's "June 2011 *cervical* spine x-rays showed minimal spondylosis without any significant findings" (T. 802 [emphasis added]). Plaintiff's *lumbar* spine (back) was it issue, not her neck. The ALJ determined at step two of his analysis that Plaintiff had severe impairments to include post-laminectomy syndrome and lumbar radiculopathy, and noted that an MRI and CT scan of Plaintiff's lumbar spine from 2013 and 2014 showed, respectively, "disc herniation with impingement upon the ventral sac and both nerve roots at L5-S1." (T. 795). Oddly, Plaintiff's lumbar spine conditions and related diagnostic imaging results were not mentioned in the ALJ's analysis of Plaintiff's physical RFC.

Accordingly, the Court concludes that remand is appropriate, and instructs the ALJ on remand to obtain a physical RFC assessment or medical source statement from an acceptable medical source concerning Plaintiff's physical capabilities, in other words, assessing how Plaintiff's limitations affect her physical ability to perform work-related functions. Further, in assessing Plaintiff's RFC, the ALJ should provide a specific rationale as to how the medical and/or opinion evidence supports his physical RFC finding and should explain the weight afforded the opinion evidence.

Upon remand, after re-assessing Plaintiff's RFC with a medical opinion that accounts for Plaintiff's deteriorating condition and that is based on a complete medical record, the ALJ should consider Plaintiff's limitations and their affects upon Plaintiff's ability to perform any job in the national economy. The ALJ shall "if warranted by the

expanded record, obtain testimony from a vocational expert to clarify any additionally assessed limitations on Plaintiff's ability to work and jobs available in the national economy."  *Wright v. Saul*, 2019 U.S. Dist. LEXIS 178337, *12-13, 2019 WL 5157026 (W.D.N.Y. Oct. 15, 2019).  Having done so, the ALJ will be able to complete the RFC determination and his five-step analysis of Plaintiff's ability to work.

**B.     Plaintiff's remaining challenges to the ALJ's decision**

Plaintiff's remaining arguments concerning the ALJ's credibility determinations and the ALJ's mental RFC finding need not be considered at this time because further development of the record on remand may affect those determinations.  *See e.g. Davis v. Berryhill*, 2018 U.S. Dist. LEXIS 39605 *10, 2018 WL 1250019 (W.D.N.Y. Mar. 9, 2018) ("Having already determined that remand of this matter is required [because the ALJ failed to obtain an updated opinion regarding his mental impairments], the Court need not and does not resolve this issue [whether the ALJ failed to comply with a directive from the Appeals Council's order].  On remand, the ALJ should properly consider all the evidence of record . . ."); *Brink v. Colvin*, 2017 U.S. Dist. LEXIS 89909, *8, 2017 WL 2531711 (W.D.N.Y. June 12, 2017) ("The Court need not reach plaintiff's arguments regarding the ALJ's credibility finding, because it has already determined that remand is necessary.  On remand, the Commissioner is instructed to reconsider the credibility finding in light of the record as a whole.").

**C.     Time limit for further administrative proceedings**

Plaintiff argues that the Court should order a remand for further administrative proceedings on an expedited basis, *i.e.*, to order that the Commissioner issue a new determination within a certain timeframe.  (Dkt. No. 18, pp. 9-10).

The Court is cognizant of the hardships that Plaintiff must have experienced because of her pursuit of benefits for nearly ten years. Plaintiff filed her initial application for SSI disability benefits on August 18, 2011. (T. 125). Her initial ALJ hearing was on February 19, 2013 (T. 43), and she received an unfavorable ALJ decision on March 13, 2013 (T. 862). The Appeals Council denied Plaintiff's request for review on May 23, 2013. (T. 862). Plaintiff commenced a civil action on July 18, 2014, and on August 20, 2015, the Commissioner's decision was reversed on grounds that the ALJ failed to consider Listing 12.05(c) and remanded the case. (T. 827). On September 25, 2015, the Appeals Council ordered the ALJ to consider the case on the grounds it was remanded for. (T. 814). On September 25, 2017, the ALJ held another hearing. (T. 837). The ALJ issued the instant unfavorable decision on January 8, 2018. (T. 789). Plaintiff then filed the instant action on March 30, 2018. (Dkt. No. 1).

The Court denies Plaintiff's request, however. Plaintiff has not yet demonstrated that she is disabled (*compare Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) and *Michaels v. Colvin*, 621 Fed. App'x 35, 41 (2d Cir. 2015) (summary order)), and regardless, to impose a time-limit could frustrate the rights of other litigants to a timely determination of disability and/or benefits. In any event, "this Court 'expects,' especially in light of the delay that [Plaintiff] has experienced because this case already has been remanded once due to the Commissioner's errors, 'that administrative proceedings on remand [will] proceed expeditiously.'" *Annis v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 216459, *30, 2019 WL 6875231 (W.D.N.Y. Dec. 17, 2019), quoting *Belen v. Colvin*, 2016 U.S. Dist. LEXIS 31755, 2016 WL 1048058, at *4 (S.D.N.Y. Mar. 11, 2016).

**CONCLUSION**

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, the decision of the Commissioner is VACATED, and this matter is REMANDED for further administrative proceedings consistent with this Decision and Order.  It is further ordered that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is DENIED, and Plaintiff's motion for similar relief in her favor (Dkt. No. 13) is GRANTED in part and DENIED in part.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

    __s/Richard J. Arcara_____
    HONORABLE RICHARD J. ARCARA
    UNITED STATES DISTRICT COURT

Dated:   April 14, 2021
         Buffalo, New York